927 A.2d 177

LISA GARRETT (FORMERLY LISA MATISA), PLAINTIFF,
v. CHRISTOPHER MATISA, DEFENDANT.

Superior Court of New Jersey
Chancery Division, Family Part,
Mercer County

Decided January 11, 2007.

470

*Carol Oswald,* for plaintiff (*Teich Groh,* attorneys).

*Lydia Fabro Keephart,* for defendant (*Pellettieri, Rabstein and Altman,* attorneys).

OSTRER, J.S.C.

Plaintiff's attorney's motion to withdraw from representation presents the issue: what must an attorney do to satisfy the duty to notify a client of the intention to withdraw when the client has moved without disclosing a new phone number or address? Neither our courts nor the Advisory Committee on Professional Ethics have addressed the question. Yet, the policy underlying the notice requirement, and persuasive out-of-state authority lead this court to conclude that a moving attorney must certify, consistent with *R.* 4:4–5(c)(2), that (1) he has made diligent efforts to locate his client; and (2) he has been unable to locate and actually serve the client with notice. Upon such a showing, the motion may be served by publication and other means reasonable under the circumstances. Inasmuch as no such showing has been made in this case, the motion to withdraw will be denied without prejudice.

### Background.

Plaintiff Lisa Garrett filed a post-judgment motion for parenting time with her son, who she had not seen in many years. Defendant father opposed the motion. Eventually, the court obtained an expert evaluation and conducted a child interview. Although factual issues remained, the parties mutually waived their right to an evidentiary hearing. They agreed to participate in a final settlement conference, and if that failed, they consented to a decision based on the papers on file, the expert report, and final written arguments. The court entered a case management order that embodied this agreement.

Thereafter, plaintiff's counsel notified the court by letter that she was unable to contact her client after plaintiff reported that she could not attend the settlement conference because of illness. Later, in a second letter, counsel notified the court that her client's family members asked her to cease efforts. Yet, there was no evidence that plaintiff's family members had authority to act on plaintiff's behalf. The court then inquired by letter whether counsel had authority to dismiss the application without prejudice, whether she intended to file the required final written argument, or she intended to seek permission to withdraw. The court wrote that if she sought permission to withdraw, "she will need to serve the motion on her [client], or, if she does not know where she is located, include a certification of diligent inquiry of the sort sufficient under the rules to justify service by publication."

Plaintiff's attorney then filed the instant motion seeking permission to withdraw based on her client's failure to communicate with her. She certified:

> I have attempted to reach her on her cell phone, which is disconnected, and, as well, through correspondence. She has not responded to my letters. I have been advised by my client's sister that Lisa is no longer living at the address at which I previously corresponded with her.

The notice of motion to withdraw was served on plaintiff by mailing it to her old address in Hamilton, New Jersey. Apparently, plaintiff gave no forwarding address; no new phone number; or any other easy way for her lawyer to contact her.

### Discussion.

It is well settled that an attorney who wants to withdraw from representing a client must notify the client in advance. "Once an attorney undertakes to represent a client, he cannot withdraw from employment without properly advising his client of his intention to do so." *In re Schwartz*, 99 *N.J.* 510, 519, 493 *A.*2d 1248 (1985). The attorney must also notify the client of the grounds for withdrawal. *Montanez v. Irizarry–Rodriguez*, 273 *N.J.Super.* 276, 287–88, 641 *A.*2d 1079 (App.Div.1994) ("Of course, before withdrawing from representation the lawyer is obliged to give reasonable notice to the client of the grounds for withdrawal."). At least where the client's whereabouts are known, the notice must also be adequate to actually inform the client that the attorney intends to cease work on the matter. *In re Feuerstein*, 115 *N.J.* 278, 286, 558 *A.*2d 828 (1989). These obligations are consistent with the Rules of Professional Conduct. "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client." *R.P.C.* 1.16(d). The notice should be given in writing, to avoid any misimpression that the attorney is still protecting the client's interests. K. Michels, *New Jersey Attorney Ethics*, § 16:5–2 at 334 (2004).

The issue in this case is what notice does an attorney owe a client who has effectively disappeared. Plaintiff's attorney would have actually notified her client had she not moved without a forwarding address. Indeed, if plaintiff were accessible, it seems unlikely that a withdrawal motion would have been filed at all. Presuming that the retainer agreement required the client to communicate with her attorney, if not specifically advise her of any changes in address, one might argue that the client's breach is material and relieves the attorney of her obligation to perform additional services. Also, one might view the failure to inform the attorney of the new address as a constructive discharge. *Cf. N.C. Formal and Informal Opinions, Proposed R.P.C. 223*, "Responsibility to Client Who Has Disappeared" (Oct. 19, 1995) ("*North*

*Carolina Opinion"*) (opining that only if diligent inquiry fails to locate client, the client's disappearance shall be deemed a constructive discharge).

■ Yet, an attorney's duties go beyond his contractual obligations.

> In light of the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court. A contract for legal services is not like other contracts.
>
> [*Cohen v. Radio–Elec. Officers Union, Dist. 3,* 275 *N.J.Super.* 241, 259, 645 *A.2d* 1248 (App.Div.1994), *modified on other grounds,* 146 *N.J.* 140, 679 *A.2d* 1188 (1996)].

*See also Pellettieri, Rabstein & Altman v. Protopapas,* 383 *N.J.Super.* 142, 150, 890 *A.2d* 1022 (App. Div.2006). Even when a client tells an attorney to cease efforts on his behalf, the attorney remains obliged to inform the client of developments in the case. *In re Rosenthal,* 90 *N.J.* 12, 16, 446 *A.2d* 1198 (1982). The court is persuaded that an attorney is compelled to search diligently for his or her client, notwithstanding the client's possible breach in failing to keep the attorney informed of his or her whereabouts.

Neither our courts nor the Advisory Committee on Professional Ethics have specifically addressed the issue of notice to a disappeared client.[1] But, advisory opinions of other ethics authorities agree that an attorney must make reasonable or diligent efforts to locate his or her client. *See Ariz. Opinion No. 2001–08,* (Sept. 2001) (stating that attorney must use "reasonable diligence to locate the client in order to inform the client of the withdrawal."); *North Carolina Opinion* ("When a client stops communicating with his or her lawyer, the lawyer must take reasonable steps to locate and communicate with the client."). *See also Conn. Informal Opinion 93–7,* "Withdrawal of Appearance when Client has Disappeared" (advising attorney to seek judicial approval of with-

---

[1] An attorney may always seek guidance from the Advisory Committee on Professional Ethics, so long as the "opinion... will not affect the interests of the parties to any pending action." *R.* 1:19–3.

drawal where attorney already had inquired of missing client's whereabouts with post office, motor vehicle agency, and client's friends). *See also Wainwright v. McDonough,* 290 *Ill.App.* 50, 7 *N.E.*2d 915 (1937) (in vacating dismissal, court found inadequate an attorney's notice to withdraw that was mailed to the house of the client's mother, who was hospitalized and unable to receive or forward it in a timely manner). *Compare Harris v. Wabaunsee,* 593 *P.*2d 86 (Okla.1979) (finding sufficient attorneys' efforts to contact client by mailing two notices to residence, which went unanswered, where clients deliberately and intentionally made themselves unavailable for notice).

■ The reasonableness of an attorney's effort to locate his or her client is a fact-sensitive determination. "What constitutes a reasonable effort to find the client depends on the circumstances of each case, including the extent to which the lawyer knows or has access to information which might reveal the client's current whereabouts." *Arizona Opinion No. 2001–08, supra.* In the *North Carolina Opinion, supra,* as in the present case, the client moved with no forwarding address and the telephone number was disconnected. The North Carolina authorities found it reasonable that the attorney questioned the client's employer, doctor, and auto insurance company, and searched property records—albeit to no avail.

In *Arizona Opinion No. 2001–08, supra,* the Arizona client advised his lawyer that he was being evicted from his apartment and could not be contacted, but did not thereafter contact the attorney. The attorney suspected that his client was homeless. He wrote to the client at his old address, but the mail was returned. The attorney inquired of the client's doctor without success. The Arizona authorities opined that the attorney at least should additionally try to contact the client through family, friends, and acquaintances, and by checking readily available public information sources, such as telephone directories, and other available leads.

■ The effort owed to a client would seem to be no less than that required of an attorney seeking to establish a basis for substituted service of an initial pleading under our Court Rules. *See R.* 4:4–4(b)(1) (permitting mailed or out-of-state personal service where "despite diligent effort and inquiry" service cannot be made in accord with subsection (a), providing for personal service within the state); *R.* 4:4–5(c) (authorizing in rem or quasi in rem jurisdiction by mail, publication, or personal service outside the state, if it appears by affidavit that despite "diligent inquiry" the defendant cannot be served personally within the state). *See also M & D Assoc. v. Mandara,* 366 *N.J.Super.* 341, 353–55, 841 *A.*2d 441 (App.Div.), *certif. denied,* 180 *N.J.* 151, 849 *A.*2d 184 (2004) (finding an inquiry insufficient where search of motor vehicle and voting records would have disclosed address for service). The diligent inquiry requirement under those rules is grounded in notions of due process. *Id.* at 353, 841 *A.*2d 441.

Yet, the court need not resort to constitutional principles to justify diligent inquiry by an attorney trying to notify a client of withdrawal. The requirement is supported by the fiduciary duties that the attorney owes to the client. *See e.g., Cohen v. Radio–Elec. Officers Union, Dist. 3, supra,* 146 *N.J.* at 155, 679 *A.*2d 1188 (stating that court shall preserve fiduciary responsibility that lawyers owe their clients). It is consistent with *R.P.C.* 1.16(d), which directs attorneys to take steps "to the extent reasonably practicable" to protect a client's interests upon withdrawal. It also arises out of an attorney's general obligation to act with diligence. *R.P.C.* 1.3 ("A lawyer shall act with reasonable diligence ... in representing a client."). The court reads these two rules to encompass a duty to inquire diligently about a client's whereabouts.

■ The content of the certification of diligent inquiry should be modeled on the one required by *R.* 4:4–5(c)(2), that is, "fully specifying the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice."

If it is shown, based on such a certification, that actual notice could not be accomplished, then it would be appropriate to permit service by publication—recognizing that it is the mode of service "least likely" to give actual notice. *M & D Assoc., supra,* 366 *N.J.Super.* at 353, 841 *A.2d* 441. The attorney should also take other measures that may reasonably enhance the possibility of actual notice, such as providing a copy of the withdrawal motion to a family member who the client may be expected to contact sometime in the future.

██ This court is not persuaded of the view of North Carolina authorities that if the diligent inquiry is unsuccessful, the attorney may presume that he has been constructively discharged. *See North Carolina Opinion* ( "[I]f the lawyer is still unable to locate the client and the client has made no effort to contact the lawyer, the client's failure to contact the lawyer within a reasonable period of time after the lawyer's last contact with the client must be considered a constructive discharge of the lawyer."). Rather, the attorney should accomplish service by publication and take any other steps that may reasonably result in actual notice. If the client does not respond to that notice, then the motion may be granted by default.

██ Applying the foregoing principles to this case, the court finds that the movant must engage in the above-described diligent effort, and so certify to the court. The court appreciates that this will impose an added burden on her and her firm. Throughout this post-judgment matter, counsel has diligently and effectively represented her client. She was a vigorous and dedicated advocate for her client. Regrettably, when the matter was about to be "tried on the papers," her client disappeared. Counsel was also in touch with plaintiff's family members. Unable to consult with her client about the final settlement conference, or preparing the final written argument, counsel filed the instant motion to withdraw. Nonetheless, she must demonstrate that she has exhausted additional reasonable efforts to locate her client, including an internet search, a search of public information—such as voting or motor

vehicle records—or inquiries of other family, friends, or professionals who may know her whereabouts. For example, while she pursued her application to commence parenting time with her child with defendant, plaintiff was already exercising parenting time with a child from another relationship. Perhaps, that child's family may be aware of plaintiff's whereabouts. If counsel locates her client, then actual notice shall be given. If plaintiff cannot be located, then she shall be notified by publication. Counsel shall also serve copies as well on plaintiff's sister with a request that it be passed on to plaintiff if the opportunity arises. If no opposition is filed in response to such service, then the motion would be granted as unopposed. The client's failure to communicate and to inform her lawyer as to her whereabouts would constitute grounds in this case for withdrawal. *See R.P.C.* 1.16(b)(5) (withdrawal permitted where client "fails substantially to fulfill an obligation to the lawyer"); *R.P.C.* 1.16(b)(7) (withdrawal permitted for "other good cause").

For the foregoing reasons, the motion to withdraw is denied without prejudice.